## BERNARD GLOEKLER CO. v. WESTBROOK HOTEL CO. (No. 10442.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 24, 1923. Rehearing Denied Jan. 26, 1924.)

1. **Appeal and error ⬥742(1)—Assignments of error, without propositions with reference thereto, not considered.**

Assignments of error, without propositions of law submitted with reference thereto, need not be considered.

2. **Appeal and error ⬥1051(1)—Admitting evidence showing payments on account, if error, was harmless, when same payments otherwise shown.**

In action for price of hotel equipment sold through plaintiff's agent, where payment of certain items to apply on the account was proved by checks issued by defendant to the agent, any error in admitting evidence of the account kept by defendant with the agent, showing payment of the same sums, was harmless.

3. **Appeal and error ⬥231(3)—Objection to admission of all answers of witness overruled, where some answers clearly admissible.**

Where objection was addressed to the admission of all answers of a witness, some of which were clearly admissible, assignment of error thereon will be overruled.

---

⬥═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On Motion for Rehearing.

**4. Principal and agent ☞124(3)—Whether agent to sell had "apparent authority" to collect held for jury.**

In an action for unpaid balance of contract price of hotel kitchen equipment, which was to be installed by plaintiff's selling agent, whether agent had "apparent authority" to collect *held*, under the evidence, properly submitted to jury (quoting 1 Words and Phrases, Second Series, p. 241).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Apparent Authority.]

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by the Bernard Gloekler Company against the Westbrook Hotel Company, a copartnership. Judgment for defendant, and plaintiff appeals. Affirmed.

Dedmon & Potter and Clay Cooke, all of Fort Worth, for appellant.

A. J. Clendenen, of Fort Worth, for appellee.

DUNKLIN, J. During the year 1917 the Bernard Gloekler Company was engaged in manufacturing and installing cooking apparatus, kitchen equipment, and refrigerators to be used in restaurants and hotels, and the Hygro Company, of Dallas, was one of its sales agents. On June 4, 1917, the former company submitted a proposition in writing to the Westbrook Hotel Company, which was engaged in the operation of a hotel in the city of Fort Worth, Tex., to furnish and install in said hotel certain kitchen equipment according to specifications accompanying the offer, all for the contract price of $5,256.20. That proposition was duly accepted by the Westbrook Hotel Company. Later an additional contract was made, by the terms of which the manufacturing company agreed to furnish a canopy, to be used in connection with the kitchen equipment, for the sum of $410, which the hotel company agreed to pay, making a total which the hotel company agreed to pay $5,666.20. The equipment so ordered was installed in accordance with the terms of the contract, and this suit was instituted against the individuals composing the partnership firm of the Westbrook Hotel Company to recover $2,226.60, the sum which plaintiff alleged to be due it as the unpaid balance of said contract price. Judgment was rendered in favor of the defendant company, and the plaintiff company has appealed.

The evidence shows without dispute that the Hygro Company, of Dallas, Tex., was handling articles manufactured by the plaintiff company, and that the contract between the plaintiff and defendant resulted from negotiations conducted by the Hygro Company as a sales agent for plaintiff company. The evidence further shows that one Mr. Grosman, who resided in Dallas and had charge of the business of the Hygro Company, acted for plaintiff company in the installation of the kitchen equipment in the Westbrook Hotel; that he employed, paid for, and superintended the doing of all the work required to accomplish that result; and that the defendant company had no other representative in that matter, but intrusted the same to the Hygro Company and its representatives. The evidence further showed that the Hygro Company, upon its own account and under a separate contract with the defendant, installed some additional equipment at the same time, which was not furnished by the plaintiff company. The defendant company carried plaintiff's account on its books in the name of the Hygro Company. During the progress of the work funds were required to pay workmen employed and to defray other expenses necessarily incident to the installation of the kitchen equipment. In order to meet those demands Grosman repeatedly called upon Mr. Huckins, representing the defendant company, for necessary funds, which were advanced and used for that purpose. No testimony was introduced to show that the plaintiff company furnished any money for that purpose, or made any arrangements with any one to furnish it within the knowledge of defendant, although the contract price charged by it included the cost of the installation, as well as the cost of furnishing the kitchen equipment.

Several months intervened between the date of the contract sued on between the plaintiff and defendant and the date when the installation of the equipment was finished. During that period, and while the work was in progress, the defendant made to the Hygro Company several payments, aggregating $4,875, one payment of $1,250 being made July 6, 1917, another for $1,500 July 12, another for $1,000 July 21, another for $2,500 August 2, another for $500 August 8, and another for $500 September 14, and according to the testimony of defendant Huckins those payments were intended and understood by him as payments on plaintiff's account, and no evidence was introduced to show that the Hygro Company had a contrary intention or understanding. The defendant also paid freight on the shipments made by the plaintiff aggregating $435.58. On October 31, 1917, the plaintiff company wired to the defendant company as follows:

"Pay no moneys for our account to Hygro Company. Make all payments direct to this company."

On November 5th plaintiff sent another telegram reading as follows:

"Hygro Company not authorized to collect moneys our contract is with you. Will hold you responsible for all payments."

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On the same day the second telegram was sent, plaintiff by letter to the defendant company confirmed both telegrams and concluded that letter with the following:

"We do not know whether the Hygro Company collected any more moneys or not; we never authorized them to do so—only what our man reported to us. Did the Hygro Company represent themselves as our representatives?"

After receipt of that correspondence, the defendant made no further payments to the Hygro Company on plaintiff's account, and later paid to plaintiff company the sum of $900. The amount so paid, plus the amount already paid to the Hygro Company, with freight charges added, was in excess of the full contract price which the defendant agreed to pay plaintiff for furnishing and installing the kitchen equipment contracted. In addition to the amount so paid, the defendant made further payments, which, together with those mentioned above, aggregated the full sums owing on plaintiff's contract and on the separate contract made with the Hygro Company, amounting in all to more than $6,500.

Following are two issues submitted to the jury, with their findings thereon:

"(1) Did the Hygro Company have authority from the plaintiff, Bernard Gloekler Company, to collect or accept payment from the Westbrook Hotel Company for goods furnished or work performed under the contract between the Bernard Gloekler Company and the Westbrook Hotel Company introduced in evidence before you? Answer. No.

"(2) If you have answered the above question in the affirmative, you need not answer the remaining question; but, if you have answered the same in the negative, then you will further state whether or not the act or acts or omissions comprising the dealings and transactions had by the defendant Westbrook Hotel Company with the plaintiff Bernard Gloekler Company, and the Hygro Company were such as that a man exercising ordinary care and prudence would have been led to believe that the Hygro Company had the authority from the Bernard Gloekler Company to receive payment for goods furnished and labor performed under the contract between the Bernard Gloekler Company and the Westbrook Hotel Company which has been introduced in evidence before you? Answer. Yes."

It thus appears that the jury found that the Hygro Company had no express authority from the plaintiff to make collections for it, but that it had implied authority so to do, or that it was in the apparent scope of its authority to make such collection. Assignments have been presented to the second issue so submitted as an improper presentation of the question whether or not it was in the apparent scope of the authority of the Hygro Company to make collections on plaintiff's account from the defendant company. It is insisted, further, that it is not within the scope of authority of a sales agent to collect for the articles sold by him, and that the evidence fails to establish implied authority on the part of the Hygro Company to make collections for the plaintiff. In plaintiff's pleadings two credits on its accounts are admitted, one of which payments was made of $1,500, and another of $1,000. The evidence showed that those two payments were made by defendant by checks given to the Hygro Company, to whom they were made payable, and that the Hygro Company cashed the same and sent its own checks to plaintiff in lieu thereof, stating to plaintiff that they had been made by the defendant on plaintiff's account. After receiving those payments, which were received by it on July 6 and July 27, respectively, the plaintiff did not notify the defendant of any lack of authority in the Hygro Company to receive payments for plaintiff. The first notice to that effect was the telegram which it sent to the defendant on October 31. On July 2, 1917, the plaintiff company wrote a letter to the Hygro Company reading, in part, as follows:

"The Hygro Company of Texas, Dallas, Texas—Gentlemen: Re Westbrook Hotel. We received yours of June 28th this a. m., along with signed addendum for the above hotel. We also note that tables, stools, canopy and block tin coils have been omitted. Our price to you on this entire contract, with these items eliminated, but including canopy—according to our telegram of June 28th—is four thousand fourteen and 50/100 ($4,014.50) dollars, f. o. b. Pittsburgh. Our figure to the Westbrook Hotel Company is, according to our letter of June 4th, $5,256.20, installed complete, and our letter of July 2d of $410 for canopy, f. o. b. Pittsburgh. This figure of $5,256.20 was quoted with the Hygro Company take care of freight and erection. Kindly inform us on what terms payment is to be made on this contract."

In reply to that letter, the Hygro Company wrote the plaintiff as follows:

"July 11, 1917.

"Bernard Gloekler Company, 1127 Penn Ave., Pittsburgh, Pa.—Gentlemen: Re Westbrook Hotel. Replying to your favor of July 2d, we mailed you some time ago a drawing O. K.'d by Mr. Huckins, of lunch counter, equipment, etc.. In reference to payment of this job, it was our understanding with Mr. Huckins that upon the arrival and installation of the goods that he would give us a check for the full amount. After receiving your letter the writer called on Mr. Huckins and explained to him that you had requested a cash payment, which is customary, in order to rush this order through. We finally persuaded him to give us his check for $1,000, and we herewith inclose our check for this amount, which you will kindly apply to credit of the Westbrook Hotel. We feel sure that if you will rush the order out with as little delay as possible that upon arrival of goods, before installation, we can get $1,500 more, then immediately fixtures are installed and accepted you will receive a check for the balance. Kindly acknowledge receipt of this payment and oblige."

Defendant had no knowledge of that correspondence.

The following is one of the definitions given in 1 Words and Phrases, Second Series, p. 241 of "apparent authority.":

"An act is within the 'apparent' scope of an agent's authority when a reasonably prudent person, having knowledge of the nature and usages of the business, is justified in supposing that he is authorized to perform it from the character of the duties which are known to be intrusted to him. Townsend v. Missouri Pac. Ry. Co., 128 Pac. 389, 88 Kan. 260."

In 21 R. C. L. pp. 854, 855, the following is said:

"The liability of the principal is not limited to such acts of the agent as are expressly authorized or necessarily implied from express authority. All such acts of the agent as are within the apparent scope of the authority conferred on him are also binding upon the principal, apparent authority being that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. By implication the authority of the agent is enlarged, when the principal permits him to do acts not expressly authorized, or which are recognized as valid after they have been done. And the actual instructions from principal to agent do not govern the case, unless the person dealing with him had notice or was put upon inquiry as to his real authority. Apparent authority may be and often is derived from a course of dealing, or from a number of acts assented to or not disavowed. Thus, one who is permitted, temporarily, in the absence of a manager of a company, to assume authority and discharge the functions of such manager, has for the time being the same power as if he were the regular manager."

In view of those authorities, we are unable to say that the issue of apparent authority was incorrectly submitted. Nor can we say that the finding of the jury in answer thereto was not supported by evidence. Appellant insists that at all events the evidence did not show any authority in the Hygro Company to collect for the $1,250 item which was paid by the defendant on July 6th, which was prior to the receipts by plaintiff of the payments of $1,000 and $1,500 made a few days thereafter, and that therefore judgment should have been rendered in its favor for that amount even though plaintiff should be denied any further recovery. But we are unable to concur with that contention, in view of all the facts related above.

[1, 2] Two assignments of error appear at the close of appellants' brief, but no proposition of law is submitted with reference to either, and for that reason we would be authorized to refuse to consider them. One of these assignments is addressed to the admission in evidence of the account kept by defendant with the Hygro Company, showing the payments of the sums which defendant claimed as credits on defendant's contract with the plaintiff. The same payments were proved by checks, marked "Paid," issued by the defendant, made payable to the Hygro Company, and shown above; hence, if there was error in admitting the account, of which we have grave doubt, the same was harmless.

[3] The other assignment referred to was addressed to the admission of several answers of the witness Huckins to several questions, the objection being addressed to all those answers considered as a whole, and, as some of those answers were clearly admissible, the assignment is overruled, aside from the question whether or not others were subject to the objection made.

For the reasons noted, all of appellant's assignments of error are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

[4] Practically all the conclusions announced in our original hearing on the principal issues of fact are challenged by appellants in their motion for rehearing. It is insisted that none of the conclusions of fact so announced have any support in the evidence, but that the uncontroverted evidence is to the contrary. The motion for rehearing covers some 25 pages of typewritten matter, and it would unduly lengthen this opinion to discuss all the arguments advanced in detail; but we shall give a summary of the principal points stressed, upon which all the arguments are predicated.

The following paragraph in the written contract between plaintiff and defendant, under which the equipment purchased by defendant was furnished, is the principal and primary basis for the contentions now made:

"*Setting.* All fixtures, as specified below, are to be new and first class, and to be finished and set by the contractor and placed in their respective positions, as indicated on drawing, ready for necessary connections. It being thoroughly understood that the owners will supply and furnish all the necessary plumbing connections, electric connections, provide the necessary foundations, and make all vent and smoke pipe connections."

Another fact, which is shown by uncontroverted proof, is also made one of the predicates of the argument advanced, and that is that the defendant purchased certain articles from the Hygro Company of Dallas in addition to the kitchen equipment which was purchased from the plaintiff, Mr. Grosman being the representative of the Hygro Company in that sale, and a portion of which articles were delivered while the equipment furnished by plaintiff was being installed, though the greater portion of those articles was furnished after plaintiff had notified the defendant that the Hygro Company had no authority to make collections on its account. It is insisted that there is no support whatever in the record for our conclusion that the evidence showed that Mr. Grosman, who

was the manager of the Hygro Company, acted for the plaintiff in the installation of the kitchen equipment which plaintiff furnished, and that he employed, paid for, and superintended the doing of the work required to accomplish that result, and that defendant had no other representative in that matter, but intrusted the same to the Hygro Company and its representatives. In their argument the following is said:

"The written contract provided that all foundations for the material, all plumbing connections, all vent and smoke connections, and every connection of every kind should be made at the expense of the appellee, Westbrook Hotel Company, and all the plaintiff was required to do was to set the fixtures which came in sections in place ready for the Westbrook Hotel Company to make the necessary connections. The undisputed evidence further shows that the work which Grosman was doing was done long before the arrival of the material shipped by the Bernard Gloekler Company, and upon arrival such fixtures were put in place by the Bernard Gloekler Company. No other expense was to be incurred by appellant, other than setting the fixtures upon the foundations, which were to be constructed by the Westbrook Hotel Company, and all connections were to be made at the expense of the Westbrook Hotel Company, who were obligated to build these foundations and make the necessary connections, plumbing, vent, and smoke. He could not have been doing it for the plaintiff, Bernard Gloekler Company, as held by the court, because the Westbrook Hotel Company was obligated to do so, and it is nowhere in the evidence shown where the Westbrook Hotel Company paid anybody for doing this work other than Mr. Grosman."

L. W. Huckins, manager and sole representative of the defendant in all of the transactions with the plaintiff, testified that the contract with plaintiff was signed by plaintiff on June 4, 1917, and by witness, representing the defendant, on June 7, 1917. He further testified, in part, as follows, relative to the work of the installation of the kitchen equipment purchased from the plaintiff:

"Mr. Grosman handled the whole affair. I suppose Mr. Grosman paid the men for erecting the work and labor down there, because he wanted money every once in awhile. I had a very small contract with Mr. Grosman. I think the whole thing amounted to something like $1,500, and I didn't need any workmen. I will try to enumerate them, so you will know. I bought a range from him, which was brought over and rolled in the kitchen, and I suppose I got a tinner to connect that pipe to it. That was all the work attached to that; and I believe we bought a dishwashing machine from him. That was just rolled in, and the chances are that our mechanic connected up the steam and water to it; and I believe we bought a steam table from him. That was a mere matter of uncrating and connecting the steam pipes to it, and we generally handled the connections ourselves, by our own mechanics, so he would not be on the job or have any pay roll to speak of pertaining to his personal contract.

I cannot tell how long a time Mr. Grosman was there exactly, but it was a considerable length of time. The material kept coming in by freight. The freight bills will show about how it arrived. I would say eight weeks, just guessing it. Mr. Grosman approached me several times, that he needed money to meet his pay rolls with, and I advanced him money. That was his argument to me, that he wanted payment on account, and the goods were coming in, and we knew we had to pay for it, and we gave him $1,000 one time, $1,250 another time, and $1,500 another time, as our ledger account will show; and, I might add, our ledger account was kept in the name of Grosman & Co., and not Bernard Gloekler Company. We had no account on our books with the Bernard Gloekler Company at all. I carried the account in the name of the Hygro Company. It was considered as a cash payment and credited to their account. The check shown me was for freight on equipment, dated August 27th, $73.-96; was on material shipped by the Bernard Gloekler Company."

The freight bill so mentioned was introduced in evidence and also others showing freight paid by the defendant on equipment shipped to it; one of those bills showing payment of $22.18 on August 29, 1917, another showing payment of $116.11 on October 6, 1917, another for $165.76 paid September 8, 1917, and another for $56.57 paid September 10, 1917. It thus appears from the evidence that the equipment in controversy, which was shipped by the plaintiff, was arriving at destination from August 27th to September 10th, and that evidence, considered in connection with the testimony of Huckins just quoted, tends to show that the work done by Grosman was performed while the shipments were arriving at destination, and not long before any of the same was shipped, as contended in the argument just quoted. That evidence further tends to support the finding that the work so done by Grosman was necessary for the installation of the kitchen equipment sold by the plaintiff, and that it was not done for the purpose of installing articles which were purchased by the defendant from the Hygro Company. The inference indulged by appellant, in its argument that the work done by Grosman must necessarily have been done either in the making of the connections for plumbing, vent and smoke pipes, and building necessary foundations for the equipment in controversy, because the defendant was under contract to bear that expense, or else for the purpose of installing the articles purchased from the Hygro Company on its own account, certainly is not sufficient to conclusively overcome positive testimony to the contrary.

The only testimony offered by the plaintiff to show that it had aught to do with the installation of the kitchen equipment sold to the defendant was that of some of its officers at its home office in Pittsburgh, Pa., who were never present in Fort Worth at all, that plaintiff sent one Mr. Baker to Fort

Worth to perform that service; but Mr. Baker did not testify in the case, and no one testified that he in fact did do the work, or did superintend the doing of the same, while Mr. Huckins testified, in effect, that he never heard of such a man, and if he came witness knew nothing of his participation in the work in any manner. Furthermore, plaintiff introduced no evidence whatever to show that it paid any of the expenses of the installation of the work, other than what was done by Baker personally, if, in fact, Baker did any part of the work. Nor was there any evidence to show that any part of the work which Huckins testified as having been done by Grosman, through his employees, was done in the building of any foundation for the equipment, or for the plumbing, electric, or smokepipe connections mentioned in the contract. It is to be further noted that in plaintiff's letter to the Hygro Company, dated July 2, 1917, copied in our original opinion, the Hygro Company was told that a price of $5,666.20 had been quoted to the defendant for all the work, but that plaintiff's price to the Hygro Company was $4,014.50, and the letter contains this further statement:

"This figure of $5,666.20 was quoted with the understanding that the Hygro Company take care of freight and erection."

That clearly indicates that the plaintiff expected the Hygro Company to pay the freight and erect the equipment after its arrival in Fort Worth. Furthermore, the written contract between the plaintiff and defendant, upon which plaintiff based its suit, following a clause which designated plaintiff as contractors, contained these provisions:

"*Supervision.* The work shall be erected under the supervision of the owners, it being understood that the contractors shall give the work competent supervision both at the site and at the shop.

"*Work Necessary.* The contractors will supply all material, labor, scaffolding, apparatus, transportation, etc., of every kind necessary to fully complete the work and all workmanship and materials are to be the best of their respective kind. The contractors are to have full charge of their work until completed. The contractors will protect and cover all work and materials requiring covering and protection at all times when necessary during the entire progress of the work. The owners shall not, under the circumstances, be held responsible for the loss of material, damage to materials or completed work, or to persons or property. The contractors will understand that the work is entirely at their risk until same is accepted, and they will be held responsible and liable for its safety.

"*Damage to Property.* The contractors shall be responsible for the safe delivery of all material and shall use proper care and caution in the execution of the work, so as not to cause any damage to adjoining property, buildings, or persons, and, in the event of any injury to same, they shall assume the responsibility and will protect and save harmless the owners of all claims and suits which may arise by reason of any accident, fault, or want of skill on the part of any of their employees during the progress of the work.

"*Guaranty.* The contractors shall be responsible for any fault appearing in their work within one (1) year after acceptance, if due to faulty material or workmanship."

Those provisions in the contract, in connection with the testimony of Huckins and other evidence in the record, to say the least, tend strongly to refute the argument advanced, based on inference alone, that it was unnecessary for plaintiff to incur any expense in order to install the equipment after the foundations, plumbing, and electric and pipe connections were furnished by the defendant, and that therefore the work done by Grosman was no part of the installation work.

The suit being upon the plaintiff's written contract, the burden was on plaintiff to show that it paid the freight to Fort Worth and installed the equipment in accordance with the terms of its written agreement. The proof is uncontroverted that plaintiff mailed the freight bills, due for the equipment which it furnished, to the Hygro Company, and took no further steps to have same paid, and those bills, amounting to $434.58, were paid by defendant. Those facts, and the further fact that the Hygro Company and not the plaintiff installed the equipment in defendant's hotel, and the fact that plaintiff instituted this suit to collect the balance of the contract purchase price, alleging that it had fully performed its contract with defendant, all strongly tended to show that plaintiff relied on the Hygro Company, as its agent, to pay the freight bills and install the equipment in compliance with its contract, indicated in plaintiff's letter to that company, dated July 2, 1917, set out in our original opinion.

Furthermore, if it was in the apparent scope of authority of the Hygro Company, as plaintiff's agent, acting through Grosman, to make the collections that were paid to it by the defendant on plaintiff's account, and being the payments mentioned in opinion on original hearing, then the defendant was entitled to credit for those payments, even though it could be said that the work done by Grosman, and on account of which, according to Huckins' testimony, some of those payments were made, was not the work required to install the kitchen equipment in defendant's hotel.

Indeed, the letter from the Hygro Company to the defendant company, of date July 11, 1917, copied in our original opinion, shows that the $1,000, mentioned therein as having been theretofore paid, was collected as an advance payment on the plaintiff's contract, and that the Hygro Company expected to collect an additional payment of $1,500 be-

fore the equipment was installed, and the balance after the equipment was installed and accepted by the defendant. After receipt of that letter, and of the remittances from the Hygro Company, plaintiff did not notify defendant of any lack of authority in the Hygro Company to make such collections. Prior to the date of that letter, defendant had made no payment, except one for $1,250 on July 6, 1917, and there is no other explanation of the discrepancy between the amount of that payment and the amount remitted by the Hygro Company to plaintiff, except the inference to be drawn that the Hygro Company reserved $250 out of that payment to cover expenses of installation work and as a part of the amount it was to receive, under its contract with the plaintiff company, indicated in plaintiff's letter to the Hygro Company, dated July 2, 1917, and shown in our original opinion. The next payment made by the defendant was on July 12th, and that was for the sum of $1,500, while the only payment made by the defendant of $1,000 was made on July 21, 1917.

On March 23, 1917, and before the contract in controversy was entered into between the parties to this suit, the plaintiff company addressed a letter to the defendant, reading, in part, as follows:

"As per the request of our sales agents, the Hygro Company, of Dallas, Texas, we are mailing you, by parcel post, one of our kitchen equipment catalogues, refrigerator catalogue, and booklets illustrating our puree machine and potato peeler. We understand that you are seriously contemplating making some changes, or installing some new equipment, and would appreciate an opportunity of submitting our suggestions covering such changes and appliances as would meet your requirements. * * * If you will, therefore, take this matter up direct with Mr. Grosman, we feel sure that the character of service and the quality of equipment that we are able to furnish through the co-operation of Hygro Company will amply repay you for any courtesies extended to us through the Hygro Company."

The testimony of the witness Huckins and the remittances by the Hygro Company of payments by the defendant conclusively show an intention on the part of defendant and the Hygro Company, at the time those payments were made, that the same should be credited on the amount defendant had contracted to pay plaintiff for the equipment and its installation. And we adhere to the conclusion, announced on original hearing, that the evidence was ample to support the jury's finding on special issue No. 2, in effect that it was in the apparent scope of the authority of the Hygro Company as agent for the plaintiff company to make those collections.

Motion for rehearing is overruled.

BUCK, J. (concurring). While I am not prepared to say that I agree with all that Justice DUNKLIN has said on the motion for rehearing, I do agree that the motion should be overruled. I am inclined to think that the letter of appellant of July 2, 1917, in fact shows that it was the intention of appellant to make the Hygro Company its agent in the matter of the sale and installation of the equipment, though the jury found that the Hygro Company was not the agent of appellant in fact. This letter is shown in the original opinion.

Moreover, so far as the appellant and appellee were concerned, the appellant was to bear the expense of freight and drayage, and the installation of the machinery and equipment on foundations prepared by the appellee. The freight and drayage amounted to $434.58. In this letter of July 2d the appellant said that the tables, stools, canopy, and a block of tin coils had been omitted. According to the specifications, 26 stools, white enameled, complete with backs, finished in oak, were to be furnished. Eight thick opalite glass top tables, 24x36 inches, were to be furnished. It is not shown, so far as I am able to determine, that the table and the tin coil and the stools were ever furnished by the appellant company. Apparently, the tables and tin coil were furnished by the Hygro Company, and there is an item of expressage paid the Hygro Company on some stools. Whether these stools were those appellant company had contracted to furnish the record does not disclose. I do not think that it is shown, by anybody present at the place and time of the installation, that the Bernard Gloekler Company really installed the equipment and paid the expenses thereof, as it agreed to do. The evidence tends to show that the labor bills connected with the installation were paid by or through Mr. Grosman, of the Hygro Company. How much was the cost of this, including the cost of supervision, is not shown.

By letter of June 19, 1918, to the appellant company, the appellee calls attention to the failure of appellant to send a display case, and states that it will hold out for this case the sum of $50.11. There may be other items, the aggregate value of which we are unable to determine, that were not furnished by appellant, and, if not furnished, for which it could not recover. According to the original contract, the appellant company was to receive for the equipment, duly installed, including the canopy, $5,666.20. It did receive $3,400 in three payments. It also got the benefit of the freight and drayage paid by appellee, amounting to $434.58, probably the cost of installation, and the allowance for items not furnished. The burden of proof was on the plaintiff below to show by preponderance of evidence that it was entitled to recover, and in what amount.

It seems to me it failed to do this. Therefore I concur in the overruling of the motion.